UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| ATI JET, INC.,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| v.    ) | Case No. _____ |
| ) | |
| RICHARD DOWNS, BENJAMIN GOLDMANN,    ) | |
| TYCHEROS CAPITAL MANAGEMENT, LLC    ) | |
| And BLUE SKY HIGHWAY, LLC    ) | |
| ) | |
| Defendants.    ) | |

**COMPLAINT FOR FRAUD**

To the Honorable Court:

ATI Jet, Inc., Plaintiff asserts its cause of action against Richard Downs ("Downs"), Benjamin Goldmann ("Goldmann"), Tycheros Capital Management, LLC ("TCM") and Blue Sky Highway, LLC ("BS"), Defendants and in support states as follows:

**PARTIES**

1. ATI Jet, Inc. ("ATI") is a Nevada corporation with its principal offices located at 7007 Boeing Dr., El Paso, Texas 79925 on the El Paso International Airport and conducts a private jet charter business under Federal Aviation Rule Part 135 in interstate commerce including the North American continent and the Caribbean.

2. Downs is an individual residing in or around Waco, Texas and is the Manager and owner of TCM, with offices located at 300 S. 13th Street, Waco, Texas, where he may be served with process.

3. Goldmann is an individual residing in or around Waco, Texas and is a Manager of TCM and BS, with offices located at 300 S. 13th Street, Waco, Texas, where he may be served with process.

4.      TCM is a Texas limited liability company with offices located at 300 S. 13th Street, Waco, Texas, where it may be served with process.

5.      BS is a Texas limited liability company with offices located at 300 S. 13th Street, Waco, Texas, where it may be served with process.

## JURISDICTION AND VENUE

6.      Defendants engaged in a fraudulent scheme to interfere with interstate commerce, fraudulently acquired title to a federally licensed aircraft engaged in interstate commerce, attempted to extort ATI into submission to Defendants' fraud with threats of baseless litigation claims and otherwise as specified herein.  Defendant's misrepresentations and extortion occurred in El Paso County, Texas.

## FACTUAL ALLEGATIONS

### Fraudulent Inducement and Execution

7.      In September 2020, TCM approached ATI indicating its' interest in investing in an aviation charter company.  TCM represented it would conduct a sincere, honest, and thorough analysis ("Due Diligence") of ATI to further the prospect of TCM's investment in ATI.  ATI asserts that a customary Due Diligence period is at least 90 days and up to 180 days.

8.      TCM requested discount flying during the conduct of the Due Diligence examination.

9.      ATI was growing its fleet of Learjet 60 aircraft and had identified for purchase N461MC ("MC") a 2005 Lear 60 for $1,850,000 (a favorable price). ATI believed the prices of Lear 60s were going to appreciate and that this price was very attractive. ATI has since purchased 7 additional aircraft and is the process of purchasing 2 additional aircraft. ATI currently owns 12 Lear 60s, 5 Lear 55s, 1 Lear 35, and two Cessnas.

COMPLAINT FOR FRAUD                                                                                                                         2

10. While discussing the prospective investment, TCM persuaded ATI to allow TCM to buy MC and lease it back to ATI to better facilitate the conduct of TCM's due diligence. ATI suggested the lease rate of $3,000 an hour plus fuel charge, the then market rate with other ATI customers. Emphasizing the prospective investment, TCM demanded $750 per hour plus actual fuel cost, which is below the cost to operate the aircraft.

11. ATI believed TCM to be sincere about investing. Thus, it was negotiated that ATI would let BS buy the aircraft, lease it from TCM for $1 per year, cover all routine maintenance and provide charter services to TCM utilizing ATI's entire Lear 60 Fleet (approximately 5 aircraft at the time) for the sole cost of engine reserves and fuel, plus non-flight line expenses, resulting in ATI losing approximately $3,000 per hour during TCM use. In exchange, ATI would have the option to purchase MC if TCM wanted to sell the aircraft during the term of the Lease, or upon termination of the agreements. ATI would not have entered into the Lease & Charter Agreement at such an economic disadvantage if it did not have the right to recoup its losses through the purchase of the aircraft (See Aircraft Lease, dated effective December 10, 2020, between ATI ("Lessee"), and TCM and Blue Sky Highway, LLC ("Lessor") (Paragraph 27, Option to Purchase Subchapter a.).

12. TCM did not conduct thorough Due Diligence and has admitted they "were busy with other business".

13. The Aircraft Lease has been terminated.

14. ATI has notified TCM that it is exercising its right to purchase MC on the terms specified in the Aircraft Lease and has tendered performance for closing of the sale, including payment in full of the specified price.

15. TCM refused to complete the transaction unless it received $3,500,000 (well more than the contractual terms).

16. Further, in total disregard of the terms of the agreements, Defendants demanded that ATI surrender MC to Defendants even though ATI is required to retain possession of MC to remain in compliance with FAA regulations regarding federal licensure of MC and to properly maintain MC.

17. Defendants' sudden disregard of the clear terms of the agreements between ATI and Defendants caused ATI to realize that Defendants never intended to invest in ATI but were simply engaged in a fraudulent scheme of misrepresentation to steal from ATI the economic windfall Defendants have acquired now through the extortion threats against Lyle Byrum, President of ATI.

18. TCM's actions caused ATI damages in an amount of at least approximately $4,000,000 in lost income and lost opportunity to be proved at trial. In addition, damages will continue to accrue at $15,000 per day, at least.

## **FRAUDULENT INDUCEMENT**

19. ATI asserts that Defendants had no intention to invest in ATI. Defendants intentionally misrepresented their intention to conduct legitimate Due Diligence to invest in ATI, to induce ATI into the business relationship and contract, to defraud ATI of the interstate service it provided and now is attempting to extort from ATI title and possession of MC to complete its fraudulent scheme.

## RESCISSION OF AIRCRAFT LEASE
## AND AIRCRAFT OPERATING AND CHARTER AGREEMENT

20. On December 10, 2020, ATI as Lessee and BS as Lessor, entered an Aircraft Lease of MC. BS had acquired ownership of MC, instead of ATI acquiring ownership. Simultaneously, ATI and TCM entered an Aircraft Operating and Charter Agreement for MC ("Agreements"), copies of which are attached as Exhibit 1.

21. To induce ATI into obtaining title to MC and the Agreements, Downs, and Goldman, on behalf of themselves and each of their affiliates, TCM and BS, falsely represented that:

   A. Defendants were truthful and honest,

   B. Defendants had not made any untrue statement of material fact,

   C. Defendants had not omitted to state any material fact in a manner that would cause the omission to be misleading,

   D. Defendants would be honest in fact in any dealings with ATI,

   E. Defendants had a genuine interest in investing in ATI,

   F. Defendants would timely conduct industry standard Due Diligence into investing in ATI,

   G. Defendants would fly approximately 100 hours a year at the discounted hourly rates,

   H. ATI had the right to repurchase MC at termination of the Aircraft Lease,

   I. The repurchase price of MC is the agreed fair market value of $1,850,000.00 plus any Capital Improvements and other upgrades (cosmetic or equipment) made during the ownership of MC by Defendants,

      J.       Defendants would cooperate in closing the sale of MC to ATI, and

      K.       Defendants would be fair and equitable with ATI.

Defendants knew, or should have known, at the time the statements were false and intended that ATI rely upon them. ATI did rely on them, causing the irreparable harm and damages described herein.

22. Defendants flew 605 hours at the discounted hourly rate from November 2020 to August 2022, more than any other ATI customer, resulting in damage to ATI of approximately $1,800,000.

23. Defendants failed to perform the Due Diligence promised. Defendants excused their lack of Due Diligence for evolving seemingly credible reasons. Finally, to ATI's shock, in December 2021 Goldmann explained "they got busy doing other things." ATI continued to operate the aircraft on a month-to-month basis until August 2022.

24. Effective December 8, 2022, ATI, and BS and TCM entered an Amendment and Extension of Aircraft Lease and Charter Agreement ("Extension Agreement"), a copy attached as Exhibit 2. ATI'S good faith 90-day extension was conditioned on working out an arrangement for ATI to repurchase MC to recover ATI's losses. During that time and at Defendants insistence, ATI gave up a valuable painting slot for one of its other aircraft to have MC repainted and improved. To induce ATI, Defendants agreed to repaint with ATI'S fleet colors and interiors. Goldmann said, "no problem, that is fine with us as you are going to end up buying it in the end." During the extension, Defendants flew ATI other aircraft at a 20% discount for over 40 hours, robbing ATI of the ability to sell those hours at full retail.

25. Paint slots cannot be obtained faster than 8 to 12 months in advance with a deposit to secure the booking. MC was out of service for 90 days. Therefore, Defendants flew on another of ATI's Lear 60's. The aircraft that was scheduled for the December slot is now scheduled for April 1, 2023. Defendants refused to sell MC back to ATI. Thus, ATI will not have an aircraft to charter for 90 days. The loss is $1,350,000. And ATI'S schedule of upgrading its fleet has been disrupted and delayed due to Defendants dishonest actions.

26. Upon completion of the paint and upgrade work on MC, Defendants declared they would not allow ATI to repurchase MC, another misleading course of dealing indicating lack of intent to invest in ATI or conduct the promised Due Diligence. Additional damages and irreparable harm were incurred, namely $186,000 for paint and upgrade and $160,000 unpaid flight fees.

27. Rescission of contract is available in cases in which one contracting party is induced to contract by the fraud of the other. _Dallas Farm Machinery Company v. Reaves,_ 158 Tex. 1, 307 S.W. 2nd 233 ,238-239 (1957) Rescission has long been a remedy for common law fraud. Generally, actionable fraud occurs when (1) a party makes a material representation that (2) is false (3) the party knows it is false or makes it recklessly without any knowledge of its truth and as a positive assertion (4) with the intention that the other party act upon it (5) the other party acts upon the misrepresentation and (6) thereby suffers injury. _Trenholm v. Ratcliff_ 646 S.W. 2nd, 930 (Tex. 1983)

28. ATI hereby offers to do equity as determined by the court to replace Plaintiff and Defendants in the positions they held before contracting and changing their positions due to the fraudulent activity of Defendants.

29.     ATI requests that the court conform to the court's judgment herein that certain Aircraft Purchase Agreement dated as of November 3, 2020, between McLane Company, Inc., and BS, vesting title and all of Purchasers rights in MC to ATI.

30.     Further, a fiduciary relationship existed between ATI and Defendants at the time the Aircraft Purchase Agreement was entered and closed.  Because of the nature of Due Diligence, ATI shared with Defendants confidential information not available to the public and sensitive to ATI.  The very close working and confidential relationship gives rise to a fiduciary duty of Defendants to deal fairly, honestly, and equitably with ATI.  The actions of Defendants described herein violate the fiduciary duties to ATI authorizing cancellation of the Aircraft Purchase Agreement and exemplary damages.

**STATUTORY FRAUD**

31.     Texas Business and Commerce Code §27.01 prohibits fraud in Stock Transactions. Defendants purported investment in ATI is stock in a corporation.  Defendants' described fraudulent activity are false representations of past or existing material facts.  The false representations were made to ATI for the purpose of inducing ATI to enter a contract and were relied upon by ATI in entering the contract. Consequently, Defendants are liable for ATI's actual damages.  Defendants had actual awareness of the falsity of the representations and promises made and failed to disclose the falsity of the representations and promises made to ATI. Defendants then benefited from the false representations and promises.  Defendants are therefore liable to ATI for exemplary damages.

## DAMAGES

32. As a proximate result of the described conduct of Defendants, ATI suffered actual monetary damages of approximately $1,800,000, in an amount to be proved at trial.

## IRREPARABLE HARM

33. Defendants fraudulent acquisition of title to MC interferes with ATI's expansion plan and eliminates the future profits derived from operation of MC as part of ATI's fleet of aircraft. Further the supply of Learjet 60 models in the condition and equipment of MC is in short supply. Consequently, setting aside Defendants title to MC, and returning title to ATI is the only adequate remedy.

## PUNITIVE DAMAGES

34. ATI will show that Defendants conduct was willful and with malicious disregard for the rights of ATI.  As a result, ATI is entitled to recover exemplary damages to deter fraudulent conduct of Defendants.  Further, ATI has suffered losses of time, operational distraction, and expenses, including attorney fees in the prosecution of this action.  Accordingly, ATI askes that exemplary damages be awarded against Defendants in the sum of at least three times ATI's actual damages.

Further, ATI seeks exemplary damages prescribed by §27.01 of the Business and Commerce Code, including attorney fees, expert witness fees, and costs of court.

**DISREGARD OF CORPORATE VEIL**

35. The TCM and BS corporations have been the instruments of fraud committed by Downs and Goldman. Upon information and belief TCM and BS are the alter ego of Downs and/or Goldman. Therefore, the court should disregard the corporate veils of TCM and BS and consider their acts as those of Downs and Goldman.

WHEREFORE, Plaintiff, ATI, requests that the Defendants Richard Downs, Benjamin Goldmann, Tycheros Capital Management, LLC, and Blue Sky Highway, LLC be cited to appear and answer and that, on final trial, ATI have the following, jointly and severally against the Defendants:

1. Judgment ordering rescission of the Aircraft Lease, Aircraft Operating and Charter Agreement, declaring them void and excusing both parties from all obligations thereunder,

2. Judgment setting aside Defendants' title to Learjet N461MC and vesting title in ATI Jet, Inc., free and clear of all claims and liens,

3. Judgment against Defendants for $1,800,000 as restitution for the discount flying hours by Defendants under the rescinded Aircraft Lease and Aircraft Operating and Charter Agreement and Extension Agreement,

4. Judgment against Defendants for $3,496,000 for actual damages suffered by ATI due to Defendants' fraudulent acts,

5. An award of exemplary damages against Defendants in a sum of at least three times ATI's actual damages,

6. Prejudgment interest as provided by law,

7. Post judgment interest as provided by law from the date of judgment until paid in full,

8. An award of recovery of ATI's expenses incurred due to the actions of Defendants, including attorney fees, expert witness fees, costs of discovery and costs of court, and

9. Such other and further relief to which ATI may be justly entitled.

Respectfully submitted,

s/s Larry G. Fields
7007 Boeing Dr.
El Paso, TX 79925
Fieldslaw@me.com
Phone 915-549-7566
Fax 915-887-3309
Tx Bar No. 06975700