# AIRCRAFT LEASE
(DRY)

This AIRCRAFT LEASE (this "Lease"), dated effective December 10, 2020 (the "Effective Date") is made between **ATI Jet  Inc.,** a Nevada Corporation ("Lessee"), and **Blue Sky Highway, LLC** a Texas limited liability company ("Lessor").

WHEREAS, pursuant to that certain Aircraft Purchase Agreement (the "Purchase Agreement") dated as of November 3, 2020 by and between McLane Company, Inc ("Seller"), and Lessor, Lessor has acquired the Aircraft (hereinafter defined) at the direction of Lessee;

WHEREAS, Lessor and Lessee have entered into that certain Aircraft Operating and Charter Agreement dated December 10, 2020 ("Charter Agreement");

WHEREAS, Lessee holds air carrier operating certificate number G41A935K issued by the Federal Aviation Administration ("FAA") pursuant to 14 C.F.R. Parts 119 and 135, and is registered with the United States Department of Transportation ("DOT") as an on-demand air taxi in commercial operations pursuant to 14 C.F.R. Part 298 (such certifications and registrations are collectively the "Air Carrier Certificate"); and

WHEREAS, Lessor and Lessee desire that Lessee dry lease the Aircraft on an exclusive and continuous basis for commercial operations by the Air Carrier in accordance with the Air Carrier Certificate.

NOW THEREFORE, in consideration of the foregoing and the mutual covenants, agreements, representations and warranties herein contained, Lessor and Lessee agree as follows:

1.  **Lease**. Lessor leases to Lessee, and Lessee leases from Lessor the following described Aircraft for use by Lessee for the sole purpose of permitting Lessee to operate the Aircraft in accordance with its Air Carrier Certificate, including without limitation, charter flights, other trips for hire, training of pilots and any other flights deemed necessary or appropriate by Lessee, together with all log books and documentation related to and necessary or appropriate to the operation of the Aircraft:

Manufacturer: **LEARJET, INC**                                         Model: **60**

Registration Number: **N461MC**                                   Serial Number: **284**

Engines:   Two (2) Pratt & Whitney model PW305A aircraft engines bearing manufacturer's serial numbers PCE-CA0423 and PCE-CA0425 (described as PRATT & WHITNEY CANADA model PW300 SERIES serial numbers CA0423 and CA0425 on the International Registry Manufacturer's List)

Lessor and Lessee acknowledge that this Agreement is intended as a dry lease and shall not be construed in any manner to constitute a "wet" lease of the Aircraft

1A. **Minimum Usage.** Lessor and Lessee expressly agree and acknowledge that Lessee will not be obligated hereunder to fly or operate the Aircraft for any minimum time, and Lessee makes no representations as to the number of flights on which the aircraft will be used hereunder or the amount of revenue that may be generated from the use of the Aircraft, in excess of the Annual Base Rent.

2. **Term; Termination**.

2.1    Except as otherwise set forth in this Section 2, the term of this lease shall be as stated on Schedule "A" attached hereto, commencing as of the **Effective Date** or upon the date the Aircraft is delivered to ATI Jet Inc ("Delivery"). whichever occurs first (the "Initial Term").  Unless renewed for a mutually agreeable additional term (a "Renewal Term"), or terminated pursuant to Section 2.4, below, at the end of the Initial Term or a Renewal Term this Lease shall convert to a month to month (a "Holdover Period") under the same terms until the parties reach an agreement on a Renewal Term or this Lease terminated by either party giving thirty (30) days written notice. The Initial Term, any Renewal Term, and any Holdover Period shall be the "Term".

2.2    This Lease may be terminated prior to the expiration of the Initial Term or any Renewal Term by a non-defaulting party in accordance with Section 14 as a result of a default of the other party.

2.3    Lessor may terminate this Lease, without notice of any kind, upon (i) surrender, suspension or revocation of the Air Carrier Certificate, or (ii) operation of the Aircraft outside the scope of insurance coverage required by this Lease or the Charter Agreement.

2.4    Lessor may terminate the Lease with 90-day notice preceding the expiration of the Initial Term and any Renewal Term.  Lessee may terminate the Lease with 90-day notice preceding the expiration of the Initial Term and any Renewal Term provided all Rent has been paid per Schedule "A".

2.5    Termination of the Charter Agreement.

3.  **Rent**. Lessee will pay Annual Base Rent to Lessor, in arrears, at the rate specified in Schedule "A" and the rights of Lessor arising under the Charter Agreement. All Rent payments will be paid at the address of Lessor specified on the signature page of this Lease or at such other addresses as Lessor may designate in writing from time to time during the Term of this Lease. Unless otherwise specified in Schedule "A", Lessee will make Rent payments to Lessor within thirty (30) calendar days of the last day of the preceding month.

4. **Lessee's Covenants**. Lessee agrees as follows:

4.1 **Licenses**. Lessee represents that it is a duly authorized commercial aircraft on-demand charter business; that it is in compliance with all applicable Federal, state and local law, rules and regulations, including but not limited to holding the Air Carrier Certificate and any other certificates, licenses or authorization required to perform its obligations under this Agreement.

4.2 **Conforming Use; Operational Control**. To use, store, repair, and maintain the Aircraft in conformance with all requirements of state and federal laws and regulations or relating to use and operation of the Aircraft. The Aircraft shall be used at all times in accordance with the Air Carrier Certificate, expect for flights conducted by Lessee pursuant to 14 C.F.R. Part 91. Lessee shall have and maintain sole and exclusive "Operational Control" (as defined in § 1.1 and § 135.77 of 14 C.F.R, FAA Operations Specification A008 and FAA Notice 8000.347 as such may be amended, modified or superseded from time to time, collectively "FAA Operational Control Regulations") of the Aircraft at all times under this Agreement. Specifically, without limitation, Lessee is responsible for ensuring that all pilots operating the Aircraft under the Air Carrier Certificate have received the required training and that the Aircraft is insured for all operations of the Aircraft conducted under the Lessee's Air Carrier Certificate. At no time during any flight under this Lease will any person or entity other than authorized Lessee personnel have any control whatsoever over the Aircraft. Lessee shall have the sole responsibility for (a) deciding whether or not to initiate the Air Carrier Flight, (b) assigning the Flight Crew, and (c) making all decisions related to operational control. Prior to initiating any flight, Lessee shall make all passengers aware that the flight is being operating by Lessee exclusively.

4.3 **No Lien or Assignment**. To keep safely, the Aircraft, and not to sell, or attempt to sell or dispose of the Aircraft, or of any part thereof, or equipment necessary thereto, or suffer or permit any charge, lien, or encumbrance of any nature upon the Aircraft, or any part thereof, or except for Permitted Subleases, remove or permit the Aircraft to be removed from Lessee's care, custody and control.

4.4 **Sublease**. Upon approval of Lessor, Lessee may sublease the Aircraft, provided, however, the Aircraft is maintained in conformance with all applicable rules and regulations pertaining to the operation of the Aircraft under 14 C.F.R. Part 135.

4.5 **Taxes**. Lessee shall pay any taxes, assessments and charges imposed by any national, state, municipal or other public or airport authority on the possession or use of the Aircraft during the Term of this Lease, limited to the following; Federal Excise Tax for air carrier service, State Franchise Tax for air carrier operations, local municipal airport authority landing fees/taxes ("Lessee Taxes"). Lessee shall defend, indemnify and hold harmless Lessor from and against any and all such Lessee Taxes and any failure to remit the same to the appropriate

governmental authority. Lessee Taxes do not include any Federal or State taxes based solely on Lessor's income, state and municipal real or personal property taxes.

4.6     **No Alterations**. Unless with the prior written consent of Lessor, not to make any major alterations, additions or improvements to the Aircraft; provided, however, that Lessee shall at all times be fully authorized to temporarily remove seats and appointments to allow carriage of additional baggage, freight or stretchers, provided however any damage caused by additional baggage, freight or stretchers shall not be considered normal wear and tear.

4.7     **Certificated Pilots**. At Lessee's sole costs, and expense, to provide and be solely responsible for the selection and the actions and inactions of Flight Crews (defined below) for all flights conducted pursuant to this Lease. All Flight Crews utilized for flights shall be:

(a) either direct employees of Lessee or agents of Lessee during every aspect of any flight conducted pursuant to this Lease, including those aspects related to any pre-flight and post-flight duties; and

(b) properly licensed and currently qualified in category, class and type of aircraft as the Aircraft, currently trained and/or tested, qualified, and hold the appropriate airman and medical certificates to conduct any flight pursuant to this Lease, and otherwise qualified to accept the specific flight assignment, considering flight and rest requirements, airspace qualification and the type of operation intended in the assignment; and

(c) approved by Lessee's Chief Pilot or Director of Operations and under the direction of Lessee Chief Pilot or Director of Operations.

(d) Each Flight Crew Member shall be specifically listed by name and airman certificate number on a list of pilots maintained by Air Carrier at its main base of operations. For purposes of this Lease, references to the capitalized term "Flight Crew" means pilots provided by Lessee who satisfy the conditions of this Section 4.7.

4.8     **Lessor's Right of Inspection**. To permit Lessor or Lessor's duly authorized agent or representative, to inspect the Aircraft at any reasonable time without interruption of use of the Aircraft, and to furnish any information in respect to the Aircraft and its use that Lessor may reasonably request. In an event of default under this Lease, Lessor may inspect the Aircraft upon demand.

4.9     **Delivery upon Termination**. To return the Aircraft to Lessor upon demand or upon termination of this Lease, such return to be solely at Lessee expense at Roswell

International Airport, Roswell New Mexico, at the expiration of the lease term, at such other place as may be designated by Lessor, in the same operating order, repair condition and appearance as when Delivered under this Lease as more fully set forth in Schedule "B", excepting only for reasonable wear and tear.

4.10   **Fuel Expense**. Unless otherwise specified in Schedule" A" hereto, Lessee will pay for all fuel, oil and other consumables for the Aircraft consumed during Lessee's use hereunder.

4.11   **Hangar Expenses**: Lessee, at its sole cost and expense, will secure appropriate hangar space and pay all such hangar rent, expenses, and fees, related to the storage of the Aircraft.

4.12   **Other Expenses**. Lessee shall pay all insurance premiums, hangar rent and fees, subscription fees for navigation charts and databases, any other subscriptions fees, and all other cost incurred in connection with maintaining and operating the Aircraft, save for those expenses explicitly enumerated and ascribed to Lessor in this Agreement or the Charter Agreement.

5.   **Conformity and Maintenance**.

5.1   **Aircraft Delivery to Lessee:** Lessee shall assist and advise Lessor in connection with the acceptance and delivery of the Aircraft under the Purchase Agreement. Following the Closing of the transaction contemplated by the Purchase Agreement (the "Completed Transaction"), the Aircraft will be delivered to ATI on a mutually agreeable closing date at an acceptable airport in the State of Kansas, upon closing of the transaction contemplated by the Purchase Agreement. The Aircraft shall be delivered to Lessee with a current U.S. Certificate of Airworthiness in Airworthy condition, with all Airworthiness Directives and Mandatory Service Bulletins complied with, with all systems functional and operational as prescribed by the Manufacturer.

5.2   **Certification and Conformity Check.** Upon Delivery of the Aircraft pursuant to this Lease, Lessee shall place the Aircraft on the Air Carrier Certificate for a fee of $30,000 plus (1) the actual costs of any additional equipment or correction of any discrepancy required as a result of the certification and conformity inspection, and (2) the costs for additional training and records review and reconstruction. Any discrepancies in the required Aircraft condition as determined through the certification and conformity process will be identified to Lessor in writing upon completion of the inspection and will be the full responsibility and cost of the Lessee to correct to Lessee's reasonable satisfaction.

5.3   **Logbooks.** Lessor will transfer to Lessee at the time of the Delivery of the Aircraft, all logbooks, documents and other records that pertain to the Aircraft (the "Aircraft Documents") that are in Lessor's possession. Lessee represents and warrants that it has inspected the Aircraft prior to Closing of the Complete Transaction, and finds the satisfactory in all respects, including

without limitation, for entry in service under the Air Carrier Certificate.

5.4 **Entry into Service Modifications.** Unless already installed, within six (6) month of the Effective Date, subject to supplier availability, or such other mutually agreeable time, Lessee shall install at Lessor's expense the following upgrades:

(a) an AirText System for an amount not to exceed $18,000.

5.5 **Paint and Interior.** Lessor and Lessee agree that at the time of Delivery, the Aircraft's paint and interior shall be, in the reasonable discretion of the Lessor, in good cosmetic appearance.

5.6 <u>**Maintenance**</u>.

(a) Lessee will maintain and keep the Aircraft and all its components in airworthy condition and in good order and repair, with any inspections or overhaul work done in accordance with, all applicable law, including 14 C.F.R. Part 135 standards and the Lessee's Continuous Airworthiness Maintenance Program, if applicable and FAA approved and accepted manuals and all other Lessee maintenance requirements as approved or required by the FAA for the FAA and Lessee's operation of flights and continued qualification for remaining on the Air Carrier Certificate.

(b) Lessee will, within a reasonable time replace in or on the, Aircraft any and all avionics, parts, equipment, appliances, instruments or accessories which may be worn out, lost, destroyed, confiscated or otherwise rendered unsatisfactory or unavailable for use in or on the Aircraft at a rate in accordance with Federal Aviation Regulations.

(c) The location of maintenance will be determined by Lessee in accordance with the provisions as established by the Federal Aviation Administration. If the Aircraft is removed from Lessee's possession by Lessor, the aircraft will not be operated by Lessee due to FAA Operational Control Regulations and Lessee must inform the FAA of its removal and the termination of the operation of Aircraft under the Air Carrier Certificate.

(d) Lessee shall obtain Lessor's approval for any 12 Year/12000 hour inspection, any paint and interior upgrades, any other capital improvements including avionics and compliance with any mandatory Airworthiness Directives issued by the Federal Aviation Administration ("Capital Improvements"), which shall be paid for by Lessor.

(e) **Engine Program:** Lessee will be responsible for all engine overhauls (CCZI/MPI) and all payments per the JSSI Engine Maintenance Contract. Lessee shall keep the engines enrolled on the JSSI Engine Maintenance Contract at all times during this Lease. Lessee has determined not to maintain the JSSI APU maintenance program. Accordingly, Lessee will be responsible for all APU overhauls and any other work that would normally be subject to the JSSI APU program.

6. **Assignment of Warranty**. Lessor hereby assigns to Lessee, for and during the Term, any warranty of the manufacturer, express or implied, issued on or relating to the Aircraft, and hereby authorizes Lessee to obtain the customary service furnished by the manufacturer in connection with any warranty, at Lessee's expense.

7. **[Reserved]**

8. **Insurance**. During the term of this Lease, Lessee shall cause the Aircraft and its operations to be insured under the Lessee fleet policy (the "Lessee Policy") at no cost to Lessor. The Lessee Policy shall provide with respect to the Aircraft, as a minimum, the coverages set forth below.

    8.1. **Liability Insurance.** A policy of Aircraft passenger liability, public liability, bodily injury, and property damage liability insurance ("Liability Insurance") issued by a company admitted to do business in the United States which is satisfactory to Lessor and Lessee and its regulators and lenders, affording coverage both in flight and not in flight, for bodily injury, including passenger, and property damage, with minimum combined single limit liability (CSL) per occurrence, not less than a CSL of at least One Hundred Million Dollars ($100,000,000.00), provided however, that any additional premium incurred solely as a result of increasing the limits with respect to the Aircraft, from the highest limit otherwise available under Lessee's fleet policy, shall be the responsibility of the Lessor. The Lessor shall not be responsible for rate increases with respect to the first Fifty Million Dollars ($50,000,000.00) of coverage, the entire premium for which shall be the sole responsibility of the Lessee. The Liability Insurance shall also include coverage for premises, products and ground hangar-keepers liability for One Million Five Hundred Thousand Dollars ($1,500,000.00), except ground hangar-keepers liability may be sub-limited to the same amount for which the Aircraft is insured, provided such ground hangar-keepers liability insurance is no less than One Million Five Hundred Thousand Dollars ($1,500,000). The Liability Insurance shall include war risk coverage consistent with Lessee's fleet policy coverage to the extent available and applicable to the Aircraft. The policy shall name each Lessor (and all Affiliates of Lessor and, if applicable, lenders, designated in writing by Lessor from time to time) as additional insured.

    8.2 **Hull Insurance**. A policy of all-risk physical damage insurance ("Hull Insurance") for a stipulated loss value (the "Stipulated Loss Value") in an amount equal to TWO MILLION and XX/100 ($2,000,000.00). The Hull Insurance shall include coverage for the Aircraft both in flight and not in flight, and shall include war risk liability consistent with Lessee's policy coverage limits to the extent available and applicable to the Aircraft. There shall be no deductible for the Hull Insurance. shall not exceed FIFTY THOUSAND Dollars ($50,000) per occurrence. The Stipulated Loss Value shall be subject to periodic revision at Lessor's reasonable request to ensure adequate coverage. The Hull Insurance shall include war risk coverage consistent with Lessee's fleet policy coverage to the extent available and applicable to the Aircraft. The policy shall name Lessor and, if applicable,

lenders, designated in writing by Lessor from time to time as additional insured and include a loss payee endorsement on behalf of Lessor (or Lessor's lenders if applicable).

8.3     **Employee Liability.** A policy of Workers Compensation and Employee Liability Coverage ("Employee Liability Insurance") in the amount of not less than One Million Dollars ($1,000,000) covering all employees of Lessee.

8.4     **Supplemental Provisions**.

(a)     The policies for Liability Insurance and Hull Insurance shall provide that, with respect to the coverage provided for the Aircraft, they may not be altered or cancelled by the insurer without at least thirty (30) days prior written notice to Lessee, Lessor, and Lessor's lender if applicable, except for ten (10) days in case of non-payment of premium. Lessee shall promptly notify Lessor of any loss or damage to, or theft of, the Aircraft.

(b)     Such policies for Liability Insurance and Hull Insurance as required above: (i) shall insure the interest of the parties to this Lease, and Lessor's lender if applicable regardless of any breach or violation by Lessee of any warranties, declarations, or conditions contained in such policies, (ii) shall be primary without any right of contribution from any other insurance maintained by Lessee or from any other insurance maintained by Lessor, (iii) shall insure contractual liability as assumed herein as set out in this Lease to the extent coverage is afforded under such Liability Insurance coverage, and (iv) shall include a waiver of subrogation in favor of Lessor and Lessor's lender, if applicable. The geographic limits, if any, contained in each and every such policy of insurance required under this Lease shall include at a minimum all territories over which Lessee will operate the Aircraft for which insurance is placed.

8.5     **Aircraft Owner Insurance.** Nothing set forth in this Section 8 shall limit or prohibit Lessor and any additional insured from obtaining supplemental insurance coverage for its own account, provided, however that such insurance is in addition to and supplements Lessee's coverage, and is not duplicative of Lessee's coverage, so as to avoid dispute as to which insurer is responsible for any loss that is covered by Lessee's insurance. Any proceeds payable under such supplemental insurance shall be payable as provided in the insurance policy relating thereto. In addition, no such insurance may be obtained which would limit, replace, or otherwise adversely affect the coverage of any insurance required to be obtained or maintained by Lessee pursuant to this Section 8.

8.6     **Evidence of Insurance.** Each party shall deliver Certificates of Insurance and copies of applicable policies to the other with respect to the insurance required to be provided hereunder. Such certificates shall be delivered upon execution of this Lease and upon the renewal date of each policy. Each Certificate of Insurance, and the applicable policy, shall require that 30 days prior written notice of cancellation or change be given to Lessor and all additional insureds.

8.7     **Mexico Operations.** In the event Lessee, intends to operate the Aircraft in Mexico, Lessee shall obtain coverage that is specifically underwritten for operation in Mexico, in accordance with the laws of Mexico.

9. **Operation by Lessor**. At no time during the term of this Lease shall Lessor operate the Aircraft.

10. **No Implied Representations or Warranties**. The parties acknowledge that Lessor is not a manufacturer.  Lessor makes no representations, promises, statements or warranties, expressed or implied, with respect to the merchantability, suitability or fitness for purpose of the aircraft or otherwise. Lessor shall not be liable to Lessee for any loss, claim, demand, liability, cost, damage or expense of any kind, caused, or alleged to be caused, directly, or indirectly, by the aircraft, or by any physical inadequacy thereof for any purpose, or by any defect therein, or in the use or maintenance thereof, or any repairs, servicing, or adjustments thereto.

11. **Lessor's Assumption of Lessee's Obligations**. If Lessee shall fail to fully and timely satisfy any and all of 'Lessee's obligations under this lease to preserve and maintain the aircraft, and discharge all taxes, security interests other than security interests granted by Lessor's, liens, encumbrances or charges with respect to the aircraft, Lessor, at Lessor's option, may do so, and all such advances by Lessor shall be immediately due and payable on demand, together with interest thereon at the rate of 10% per annum, until the unpaid balance shall have been repaid in full. Lessee warrants to Lessor that it is a Nevada Corporation based in El Paso, Texas and the Aircraft is leased to Lessee for the sole purpose of commercial air carrier operations for Alaska, Canada, United States, Mexico, Central America, South America and the Caribbean. Notwithstanding anything to the contrary set forth in this Section 11, Lessor shall not have any rights under this Section 11 until the passage of ninety (90) days after Lessee's failure to honor its obligation(s) after receipt of notice thereof from Lessor.

12. **Risk of Loss, Damage or Destruction**.  Lessee shall bear the risk of loss of the Aircraft at all times during the Term.  If the Aircraft sustains physical damage during the Term of this Lease, Lessee will repair such damage at Lessee's expense, using the proceeds of insurance or otherwise. If the Aircraft is totally and permanently destroyed, this Lease will terminate as of the date of destruction and the parties will be discharged from further obligations to each other hereunder, except for any accrued and unpaid Rent or other payment obligations.

13. **Indemnification**.  Lessor hereby indemnifies, defends, and holds harmless Lessee, its officers, members, owners, directors, employees, agents, representatives, partners, shareholders, subsidiaries, affiliates, and their successors, assigns, and transferees (collectively the "**Lessee Indemnified Parties**") for any claim, damage, loss or reasonable expense, including, without limitation, reasonable attorneys' fees, resulting from injury or death of persons or loss or damage to property which arises either directly or indirectly out of the breach of this Agreement, or resulting from the negligence or willful misconduct of such indemnifying party (an "**Indemnified Loss**"), provided that Lessor will only be liable hereunder for any Indemnified Loss to the extent of any portion of such Indemnified Loss that is not covered by the insurance coverages specified in Section 8 hereof.

Lessee hereby indemnifies, defends, and holds harmless Lessor, and all Affiliates of Lessor which have been designated by such Lessor in writing (collectively the "**Lessor Indemnified Parties**") for any Indemnified Loss, provided that (a) Lessee will only be liable hereunder for any Indemnified Loss to the extent of any portion of such Indemnified Loss that is not covered by the insurance coverages specified in Section 8 hereof; and (b) with respect to loss or damage to the Aircraft, (i) such loss or damage shall only be deemed an Indemnified Loss subject to indemnification hereunder if such loss or damage arises directly or indirectly from the gross negligence or willful misconduct of Lessee or its officers, members, owners, directors, employees, agents, representatives, partners, shareholders, subsidiaries, affiliates and subcontractors ("**Gross Negligence Aircraft Damage**"), and (ii) Lessee will only be liable hereunder for such Gross Negligence Aircraft Damage to the extent of any portion of such Gross Negligence Aircraft Damage that is not covered by the insurance coverages specified in Section 8 hereof (except that any deductible shall be subject to indemnification hereunder).

The Lessee Indemnified Parties and the Lessor Indemnified Parties are intended third party beneficiaries of this Agreement

EACH PARTY UNDERSTANDS THAT (a) ACTUAL INSURANCE PROCEEDS (IF ANY) FROM THE FOREGOING INSURANCE POLICY COVERAGES, (b) THE INDEMNIFICATION SET FORTH IN THIS SECTION 13, AND (c) ITS RIGHT TO DIRECT DAMAGES ARISING IN CONTRACT FROM A BREACH OF THE OTHER PARTY'S OBLIGATIONS UNDER THIS AGREEMENT SHALL BE EACH PARTY'S SOLE REMEDY AND PROTECTION FOR ANY LOSS OR DAMAGE TO THE AIRCRAFT, AND SUCH SOLE REMEDY SHALL INCLUDE RECOVERY FOR LOSS OR DAMAGE FOR ANY REASON, INCLUDING, BUT NOT LIMITED TO, DIRECT OR INDIRECT LOSS, DAMAGE TO THE AIRCRAFT, OF INCOME, USE, REVENUE, PROFITS OR BUSINESS OPPORTUNITIES, UNINSURED LOSS, OR SPECIAL, INDIRECT, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES, IRRESPECTIVE OF WHETHER ANY OF THE ABOVE ARISES, DIRECTLY OR INDIRECTLY, FROM ANY ACT OR OMISSION OF HAS, AIRCRAFT OWNER OR EACH PARTY'S EMPLOYEES OR AGENTS (OR ANY COMBINATION THEREOF) TO THE FULLEST EXTENT PERMITTED BY LAW.  IN NO EVENT SHALL ANY PARTY BE LIABLE FOR OR HAVE ANY DUTY OF CONTRIBUTION TO THE OTHER PARTY FOR ANY CLAIMED DIMINUTION IN VALUE OF THE AIRCRAFT. EXCEPT IN THE CASES OF FRAUD, BAD FAITH AND WILLFUL MISCONDUCT, EACH PARTY WAIVES ANY CLAIM AGAINST THE OTHER FOR LOSS OR DAMAGE TO THE AIRCRAFT.  IN NO EVENT SHALL ANY OF THE AFFILIATES OF THE LESSOR BE DEEMED TO INCUR ANY PERSONAL LIABILITY IN CONNECTION WITH ANY LESSOR EVENT OF DEFAULT.

14. **Events of Default.**  The following shall constitute an Event of Default:

   a. A material breach of the terms of this Lease;

      b.      A default under the Charter Agreement;

      c.      The revocation, suspension, or surrender of Lessee's Air Carrier Certificate;

      d.      The occurrence of two or more accidents or incidents involving the Lessee which are required to be recorded to the FAA or National Transportation Safety Board.

15.    **Remedies upon Default**. If Lessee shall fail to pay any Rent or any other amounts payable pursuant to this Lease, when the same is due and payable, or if Lessee shall breach any other provision of this Lease or the Charter Agreement, then Lessor, at Lessor's option and conditioned on prior written notice to Lessee of any default and ten day cure period, may take possession of and remove the Aircraft, and all equipment, avionics, instruments, accessories, and repairs thereon which shall be considered a component part of the Aircraft, such retaking possession constituting a termination of this Lease. In the event of retaking by Lessor and termination of this Lease, Lessee will remain liable to Lessor for payment of any Rent due hereunder, and the indemnification provisions of Section 13 in respect of Lessee's possession and use of the Aircraft up to the date Lessor repossession of the Aircraft.

16.    **No Passage of Title**. This agreement is a lease, and Lessee does not acquire hereby any title, legal or equitable, in the Aircraft or to the proceeds of the sale of the Aircraft, except its interests as Lessee under this Lease.

17.    **Miscellaneous**.

    17.1    Lessor warrants that, if Lessee performs Lessee's obligations under this Lease, Lessee shall peaceably and quietly hold, possess and use the aircraft during the entire Term, free of any interference or hindrance from Lessor, except as specifically permitted by this Lease.

    17.2    The relationship between Lessor and Lessee is only that of Lessor and Lessee. Lessee shall never at any time during the Term of this Lease for any purpose whatsoever be or become the agent of Lessor, and Lessor shall not be responsible for the acts or omissions of Lessee or its agents.

    17.3    The respective rights and remedies of Lessor and Lessee with respect to any of the terms and conditions of this Lease shall be cumulative and not exclusive, and shall be in addition to all other available rights and remedies.

    17.4    The failure by any party to strictly enforce any provisions of this Lease shall not be construed as a waiver thereof or as excusing the other party from future performance.

17.5   Lessee acknowledges and agrees that the Aircraft is of a size, design, capacity and a manufacturer selected by Lessee and suitable for Lessee's purposes.

18.   **Severability**. The invalidity of any portion of this lease shall not affect the remaining valid portions thereof.

19.   **Entire Agreement**. This lease constitutes the entire agreement between the parties hereto pertaining to the lease of the Aircraft, and any change or modification to this lease must be in writing and signed by the parties.

20.   **Notices**. All notices or other documents under this lease shall be in writing and delivered personally or mailed by certified mail, postage prepaid, addressed to the parties at the addresses specified below or at such other addresses as the parties may designate in writing from time to time.

21.   **Non-Waiver**. No delay or failure by either party to exercise any right under this lease, and no partial or single exercise of that right, shall constitute a waiver of that or any other right, unless otherwise expressly provided herein.

22.   **Headings**. Headings in this Lease are for convenience only and shall not be used to interpret or construe its provisions.

23.   **Governing Law; Venue**. This Lease shall in all respects be construed and interpreted in accordance with the substantive laws of the State of Texas without giving effect to any choice of law or conflict of law provision or rule that would cause the laws of any other jurisdiction to apply. Each Party consents to the exclusive jurisdiction of the federal and state courts having jurisdiction in McLennan County, Texas for any legal proceedings arising out of this Lease and waives any right to claim that such courts are an inconvenient forum. In such proceedings, the prevailing Party shall be entitled to recover all of its legal costs including reasonable attorneys' fees.

24.   **Counterparts**. This Lease may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

25.   **Binding Effect**. The provisions of this Lease shall be binding upon and inure to the benefit of the parties and their respective legal representatives, successors and assigns.

26.   **Force Majeure**.   Neither Party shall have any liability or obligation for delay or failure to deliver or perform pursuant to this Lease when such failure is caused by weather conditions, natural disasters, pandemic, fire or earthquake, government regulation or authority including but not limited to air traffic control directives, sudden or unexpected mechanical difficulty, war, acts of terrorism, civil unrest, strikes or labor disputes, civil acts or acts of God (a "Force Majeure Event"). If a Force Majeure Event arises which prevents either Party form performing their obligation under this Agreement for a period of ten (10) days or more, the party not prevented from performing by the Force Majeure Event may terminate this Lease

which shall also terminate the Lease.  If terminated, Lessee will redeliver the Aircraft as provided in Section 4.9 of this Lease.

27. **Option to Purchase**.  Prior to Lessor's sale of the Aircraft, Lessee will have the first right of refusal to purchase the Aircraft from Lessor upon satisfaction of the following conditions, for $1,850,000.00 plus any Capital Improvements and other upgrades (cosmetic or equipment) made during the ownership of Aircraft by Lessor (which the Parties estimate to be the fair market value of the Aircraft on the terms stated herein:

(a) Lessee or Lessor terminates this Agreement or the Charter Agreement; or
(b) this Lease or the Charter Agreement expires by its own terms; *and*
(c) Lessor exercises its right to sell the Aircraft.

28. **Cape Town Convention.**  The parties agree to register the following on the International Registry against the Aircraft and Engines pursuant to the Cape Town Convention:

an international interest between Lessee, as debtor and Lessor, as creditor relating to this Lease

"**Cape Town Convention**" means the Convention on International Interests in Mobile Equipment and the Protocol on Matters Specific to Aircraft Objects, effective June 1, 2006, establishing an international registry ("**International Registry**") for the registration of certain interests in aircraft.

[SIGNATURE PAGE TO FOLLOW]

EFFECTIVE ON the <u>10th</u> day of December, 2020.

| **Lessee's Address:** | **Lessee: ATI JET INC** |
|---|---|
| <u>7007 Boeing Drive</u><br><u>El Paso, TX 79904</u> | *DocuSigned by:* **Lyle Byrum** — 300A3183466F4FF...<br>By: _____<br>Lyle Byrum – Director of Operations |
| Telephone: <u>915-772-1449</u><br>Facsimile: <u>915-772-1467</u> | _____ |
| **Lessor's Address:** | **Lessor: BLUE SKY HIGHWAY, LLC** |
| <u>300 S. 13th Street</u><br><u>Waco, TX 76701</u><br>Telephone:  <u>915-821-3550</u> | By: _____<br>Richard Downs, as Manager of Tycheros Capital Management, LLC, its Manager |

EFFECTIVE ON the <u>10th</u> day of December, 2020.

| | |
|---|---|
| **Lessee's Address:** | **Lessee: ATI JET INC** |
| <u>7007 Boeing Drive</u><br><u>El Paso, TX 79904</u> | **By:** _____<br>Lyle Byrum – Director of Operations |
| Telephone: <u>915-772-1449</u><br>Facsimile: <u>915-772-1467</u> | _____ |
| **Lessor's Address:** | **Lessor: BLUE SKY HIGHWAY, LLC** |
| <u>300 S. 13th Street</u><br><u>Waco, TX 76701</u><br>Telephone:  <u>915-821-3550</u> | *DocuSigned by:*<br>*Richard Downs*<br>—3C25F796DB404BC...<br>By: _____<br>Richard Downs, as Manager of Tycheros Capital Management, LLC, its Manager |

**SCHEDULE "A"**
**(DRY)**

PARAGRAPH:

3. **RENT**:
    a. Annual Rent: $1.00

SCHEDULE "B" RETURN CONDITIONS

**AIRCRAFT DRY LEASE AGREEMENT**

**RETURN CONDITIONS**

In addition to the requirements set forth in Section 4.9 of the Lease, Lessee shall return the Aircraft in compliance with all of the following provisions (the "**Return Conditions**"):

a. The Aircraft shall have been operated in accordance with the Lease and in compliance with Federal Aviation Regulations Part 91, Part 135 and all other applicable FAA regulations.

b. The Aircraft exterior shall be washed and the interior shall be clean.

c. The Aircraft shall have installed the full complement of engines and other equipment, parts, components, accessories and loose equipment as were delivered to Lessee at the commencement of the Term.

d. The Aircraft shall be in as good operating condition as when delivered to Lessee hereunder, ordinary wear and tear excepted. Those items of the Aircraft that are damaged shall be replaced or repaired by Lessee.

e. The Aircraft, except as otherwise provided in the Lease or as consented to by Lessor, shall be in the same configuration (including, but not limited to, interior seating configuration, galleys and lavatories) as when the Aircraft was originally delivered to Lessee hereunder.

f. All records, logs and other materials delivered with the Aircraft at the commencement of the Term and those acquired or prepared by Lessee during the Term shall be returned with the Aircraft.

g. When the Aircraft is returned to Lessor, the Aircraft shall be airworthy and with all aircraft systems (including galleys, passenger and cargo compartments) shall be fully operational for their intended functions. Lessee shall operationally check all systems at the time of return of the Aircraft and shall report all defects found to Lessor.